IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**18 CIV 5460**

PETER E. DEUTSCH,

      Plaintiff/Petitioner, and

RECEIVER ROBERT SEIDEN,

      Plaintiff/Petitioner,

vs.

ZST DIGITAL NETWORKS, INC.,

      Defendant/Respondent,

and

KING & WOOD MELLESONS,

      Garnishee.

**VERIFIED PETITION FOR SPECIAL PROCEEDING AND TURNOVER OF JUDGMENT DEBTORS' PROPERTY, INCLUDING PROPERTY HELD BY GARNISHEE**

Case No.

AUG 05 2013

U.S.D.C. S.D. N.Y.
CASHIERS

1

Peter E. Deutsch ("Judgment Creditor" or "Mr. Deutsch") and Receiver Robert E. Seiden ("Mr. Seiden" or "Receiver") (collectively "Petitioners"), by and through its attorneys, Anderson Kill & Olick, P.C., as and for its Verified Petition for Special Proceedings and Turnover of Judgment Debtor's Property Held by Garnishee, King & Wood Mellesons ("King & Wood" or "Garnishee"), pursuant to Federal Rules of Civil Procedure 69, N.Y. Civil Practice Law and Rules ("CPLR") Articles 4 and 52, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has proper supplemental jurisdiction over the above captioned turnover proceeding pursuant to 28 U.S.C. § 1367 in that the Southern District of New York has ancillary jurisdiction, as a judgment was entered on May 30, 2013 in in <u>Deutsch et. al. v. ZST Digital Networks Inc.</u>, Case No.: 13-CV-02533.

2.      The Court has personal jurisdiction over respondent ZST Digital Networks Inc. ("Respondent" or "ZSTN" or "Judgment Debtor" or the "Company") because: (i) the situs of the injury *i.e.,* delisting of ZSTN's stock from NASDAQ occurred in the State of New York, County of New York, and; (ii) ZSTN purposely availed itself to this Court's jurisdiction by virtue of conducting business in the State of New York.

3.      The Court has personal jurisdiction over the King & Wood Mellesons, as Garnishee, as it is a multinational law firm conducting business in New York with an office located on the 42nd Floor of 444 Madison Avenue, New York, NY 10022.

4.      Venue is proper in the Southern District of New York because a substantial part of the events giving rise to the claim occurred in State of New York, County of New York; and because Garnishee conducts business through its offices which are located in New York County.

2

## SUMMARY OF APPLICATION

5.      This turnover proceeding arises out of ZSTN's failure to pay a $32,277,368.70 final judgment entered against it and in favor of Mr. Deutsch in the Delaware Chancery Court on March 20, 2013 (the "Delaware Judgment").

6.      The Delaware Judgment was entered pursuant to an order by the Honorable Judge Travis Laster of the Delaware Chancery Court, granting the Petitioner a "put" option for his shares in ZSTN at the company's last reported book value of $8.21/share ("Delaware Order") as part of the contempt sanctions for the company's failure to produce its books and records, as ordered earlier by the court. Subsequent to the Delaware Order and Judgment, Mr. Duetsch exercised his put option for approximately 3.9 million shares of ZSTN, which ZSTN has utterly failed to execute upon.

7.      The Delaware Order also provided for the appointment of a receiver for the purpose of enforcing ZSTN's compliance with the Courts Orders, including ZSTN's execution and payment of Mr. Deutsch's "put" option. Subsequently, a separate order was entered appointing the Petitioner, Robert Seiden as the Receiver in the case (the "Receiver Order").

8.      Thereafter, on April 16, 2013, Petitioners filed a motion for summary judgment[1] to domesticate Mr. Deutsch's $32,277,368.70 judgment in this jurisdiction pursuant to the Full Faith and Credit Clause. As service was proper in the Delaware action, and as all requisite elements of full faith and credit were fulfilled, on May 30, 2013, the Honorable Judge Robert Patterson of the Southern District of New York, entered judgment here in New York thereby domesticating the Delaware judgment (the "Judgment").

9.      King & Wood serves as ZSTN's counsel in Hong Kong and has received

---

[1] Petitioners' commenced the domestication action by summary judgment in lieu of complaint as ZSTN defaulted for non-appearance in the Delaware action.

substantial legal fees in knowing violation of the Receiver Order. During the pendency of the Southern District of New York action, on or about May 13, 2013, King & Wood, "acting on behalf of ZSTN,"[2] engaged the law firm Duane Morris LLP ("Duane Morris") to represent ZSTN in Deutsch et. al. v. ZST Digital Networks Inc., Case No.: 13-cv-02533. See Affirmation of David Graff dated August 5, 2013 ("Graff Aff."), **Exhibit 15** (ZSTN's Emergency Motion for Continuance).

10.    On May 13, 2013, King & Wood, acting on behalf of ZSTN, wired $25,000 that belonged to ZSTN as a retainer fee ("Initial Retainer Fee") to Duane Morris LLP. See Graff Aff., **Exhibit 16** (Duane Morris's Declaration in Support of Motion to Dismiss ("Duane Morris Declaration"), ¶6.

11.    Furthermore, annexed as part of the Duane Morris Declaration is a copy of the Engagement Letter ("Engagement letter") between Duane Morris and ZSTN, dated March 12, 2013. See Id. at Exhibit C. Pursuant to the Engagement Letter, Duane Morris states that they "may at any time request" similar fees, in addition to the $25,000 Initial Retainer Fee, for any professional fees associated with their representation of ZSTN. Furthermore, Duane Morris has stated that "the [Initial] [R]etainer [Fee]... has been applied." See Graff Aff., **Exhibit 17** (Duane Morris's Motion to Dismiss), Footnote 3. Thus, on information and belief, King & Wood has made transfers *in addition to* the Initial Retainer Fee on behalf of ZSTN, including but not limited to transfers that finance ZSTN's litigation expenses.

12.    Under the Receiver Order, "[p]ayment of the fees and expenses of the receiver and any experts or advisors retained by the receiver shall have *priority* over all other obligations, payments or disbursements of [ZSTN]." See Graff Aff., **Exhibit 13** (emphasis added). The

---

[2] Annexed as part of ZSTN's Emergency Motion for Continuance was the affirmation of J. Many Parks dated May 14, 2013 ("Parks Affirmation"), which affirms that King and Wood was "*acting on behalf of ZSTN.*" See Graff Aff., **Exhibit 15** (ZSTN's Emergency Motion for Continuance), Exhibit "A" at ¶2 (emphasis added).

Receiver Order clearly and unambiguously prioritizes payment of the Mr. Seiden's fees over all other obligations, payments or disbursements of ZSTN, including ZSTN funds that King & Wood received from ZSTN and transferred to Duane Morris. However, ZSTN has yet to satisfy its obligations to Mr. Seiden. As Hong Kong counsel for ZSTN, King & Wood indisputably had knowledge that these transfers of ZSTN funds violated the Receiver Order.

13.     Additionally, King & Wood also had knowledge of the $32,277,368.70 Delaware Judgment and that ZSTN has yet to satisfy its obligations to Mr. Deutsch. Even though the entire Judgment remains unpaid and outstanding, King & Wood has and continues to transfer ZSTN assets to third parties such as Duane Morris.

14.     These conveyances intentionally hinder and delay the payments that ZSTN owes Mr. Seiden, the Receiver, and Mr. Deutsch, the Judgment Creditor. Therefore, this petition seeks an Order holding that the transfers of ZSTN's assets by King & Wood, acting on behalf of ZSTN, including but not limited to the Initial Retainer Fee, are void and/or should otherwise be set aside as fraudulent conveyances and should be turned over to Petitioners.

## THE PARTIES

15.     Respondent, ZSTN, is a company incorporated in the State of Delaware with operations in China.

16.     Petitioner Peter E. Deutsch is an individual residing in the State of Connecticut who has a final Judgment entered in his favor and against ZSTN by the Delaware Chancery Court that has been domesticated in New York.

17.     Petitioner Robert Seiden is the Receiver appointed by Order of the Delaware Chancery Court to effectuate the Delaware Orders against ZSTN.

nydocs1-1016757.3

18.     Garnishee, King & Wood Mellesons, is a multinational law firm conducting business in New York and maintaining an office in New York. King & Wood serves as ZSTN's counsel in Hong Kong.

## STATEMENT OF FACTS

### Respondent's Failure to Respond to Petitioner Peter E. Deutsch's Section 220 Inspection of Book and Records

19.     ZSTN is a Delaware corporation with its principal business operations in China. The Company supplies digital and optical network equipment and provides installation services to cable system operators.  The Company also provides GPS location and tracking services to local logistics and transportation companies in China.   Petitioner Mr. Deutsch became a stockholder and, over time, invested millions of dollars in the Company.    Mr. Deutsch's investment decision was guided by his review of ZSTN's publicly available financial statements, certified  under the Sarbanes-Oxley Act, and his participation  in investor conference calls, which presented a picture of a financially stable, robust, and dynamic Chinese company at the cutting edge of its field.

20.     After raising millions of dollars in U.S. capital markets based on audited financials filed with the SEC, on March 11, 2011, ZSTN suddenly reversed direction and stopped reporting with the SEC.

21.     On April 6, 2012, the Company issued a press release announcing its intention to delist from NASDAQ.   See Graff Aff., **Exhibit 1** (Press Release, *ZST Digital Networks, Inc., t o Voluntarily Delist from NASDAQ)*. Subsequently ZSTN delisted from the NASDAQ and started trading over-the-counter at significantly lower prices. On August 13, 2012, ZSTN filed a Form  15  with the SEC, officially terminating  its  registration under  Section 12(g)

Securities and Exchange Act of 1934.  <u>See</u> Graff Aff., **Exhibit 2** (Form 15).  The Company had, so to speak, "gone dark".

22.     ZSTN's "going dark" was in keeping with the disturbing and insidious trend among valuable and operating Chinese companies that stop reporting and delist from the U.S. markets, thereby deliberately lowering the trading price of the company's stock, to facilitate an eventual, insider-led privatization transaction.  As the Wall Street journal recently reported, "the era of reverse mergers—a back-door route to the securities market that involves combining a private company with an inactive, publicly traded shell—may have ended. Another has begun: Chinese companies going private."  <u>See</u> Graff Aff., **Exhibit 3**.

23.     It is against this backdrop that Mr. Deutsch served ZSTN with a demand (the "Demand") pursuant to Section 220 of Delaware Corporation Law for inspection of books and records of the Company to value his investment. <u>See</u> Graff. Aff., **Exhibit 4**.    In breach of Section 220, ZSTN failed to respond to the Demand within five business days.  Further, by letter dated October 16, 2012, albeit ZSTN acknowledged Mr. Deutsch's right to inspect the books and records, it informed him that it would not produce its books and records in Delaware, where the Company is incorporated, even though it was required to do so under Delaware law.  Nor would they produce them in New York, which is mutually convenient because the Company has its investor liaison Taylor Rafferty LLC there and Mr. Deutsch's counsel is located there as well.  Instead, ZSTN unreasonably mandated that Mr. Deutsch travel to China to exercise his statutory right to inspect the books and records.  <u>See</u> Graff Aff., **Exhibit 5** (correspondence between Mr. Deutsch's and the ZSTN's counsel, Pillsbury Winthrop LLP).

24.     As a result, Mr. Deutsch was forced to commence an action before the Delaware Chancery Court by filing a complaint pursuant to 8 Del. C. §220 seeking expedited adjudication

on ZSTN's failure to allow inspection of its books and records. See Graff Aff., **Exhibit 6**. ZSTN was duly served with a copy of the Summons. See Graff Aff., **Exhibit 7**. Thereafter, the Delaware Chancery Court convened a conference call between Mr. Deutsch's counsel and ZSTN's temporarily designated local Delaware counsel. However, despite being represented officially by Pillsbury Winthrop LLP originally, and unofficially by different Delaware counsel on the Court conference call, ZSTN did not answer the complaint and intentionally defaulted. As a result of ZSTN's default, on December 11, 2012, Delaware Chancery Court issued an Order requiring it to produce its books and records for inspection in Delaware on or before December 28, 2012 ("Books and Records Order"). See Graff Aff., **Exhibit 8**. Despite being duly served with the Books and Records Order, (see Graff Aff., **Exhibit. 9**) ZSTN never complied. See Graff Aff. at ¶8.

**Delaware Chancery Court Orders a 'Put' of Mr. Deutsch's Shares and the Appointment of a Receiver**

25.      In response to ZSTN's failure to obey the Chancery Court's Books and Records Order, Mr. Deutsch filed a motion for contempt seeking: (i) a 'put' option for Mr. Deutsch's shares at fair market value; (ii) attorney's fees and costs, and; (iii) the appointment of a receiver to effectuate the Court's Order. Once again, ZSTN defaulted in its appearance. Thus, by Order dated March 20, 2013, the Hon. J. Travis Laster granted Mr. Deutsch's motion stating, *inter alia* that: "the remedies of a put right and receivership that were requested as a contempt sanction are exceptional. Nevertheless, Mr. Deutsch has provided persuasive justifications for them in his papers, and the Respondent corporation failed to appear, much less respond to or oppose, the motion for contempt."   The Delaware Order and Judgment awarded Mr. Deutsch the option to "put" his shares in the Company at its last reported book value of $8.21/share and to appoint a receiver for the purpose of enforcing ZSTN's compliance with the Court's Orders. See Graff

8

Aff., **Exhibit 10**.   Shortly thereafter, ZSTN was duly served with the Delaware Order, (see id. at

**Exhibit 11**) and on March 26, 2013, Mr. Deutsch exercised his 'put' option for all but 100 of his

shares, yielding a sum of $32,277,368.70 which is now due and owing from the ZSTN to Mr.

Deutsch.   See Graff Aff., **Exhibit 12**.   To date, the $32,277,368.70  that is due and owed to Mr.

Deutsch remains unpaid.[3]

## The Delaware Judgment Has Been Domesticated in the State of New York Pursuant to the Full Faith and Credit Clause

26.     Subsequent to the Delaware Judgment being entered, Petitioners moved by

summary judgment in lieu of complaint to domesticate Mr. Deutsch's $32,277,368.70 judgment

in this jurisdiction pursuant to the Full Faith and Credit Clause. As service was proper, and all

requisite elements of Full Faith and Credit were fulfilled, on May 30, 2013, the Honorable Judge

Robert Patterson entered judgment in Mr. Deutsch's favor thereby domesticating the Delaware

judgment in New York.  See Graff Aff. **Exhibit 14**.

## On May 13, 2013 King & Wood Mallesons, acting on behalf of ZSTN, Fraudulently Conveyed at least $25,000 to Duane Morris

27.     King & Wood serves as ZSTN's counsel in Hong Kong, and has received

substantial legal fees in knowing violation of the Receiver Order. On or about May 13, 2013,

King & Wood, "acting on behalf of ZSTN,"[4] engaged the law firm Duane Morris LLP ("Duane

Morris") to represent ZSTN in this action in the U.S. See Graff Aff., **Exhibit 15** (ZSTN's

Emergency Motion for Continuance); see also, Docket for Deutsch et. al. v. ZST Digital

Networks Inc., Case No.: 13-cv-02533, Document Number 20.

---

[3] ZSTN's time to appeal said Orders has expired and is time barred pursuant to Rule 6(a)(i) of the Rules of the Supreme Court of Delaware requiring the notice of appeal be filed within 30 days after the entry of the docket of a judgment.
[4] Annexed as Exhibit "A" to ZSTN's Emergency Motion was the affirmation of J. Many Parks dated May 14, 2013 ("Parks Affirmation"). Paragraph 2 of the Parks Affirmation affirms that King and Wood was "acting on behalf of ZSTN."

28.      On May 13, 2013, King & Wood, acting on behalf of ZSTN, wired $25,000 as a retainer fee ("Initial Retainer Fee") to Duane Morris to provide legal services in connection with Deutsch et. al. v. ZST Digital Networks Inc., Case No.: 13-cv-02533. See Graff Aff. **Exhibit 16** (Duane Morris Declaration) ¶6. Indeed, annexed as part of the Duane Morris Declaration is a copy of the $25,000 wire transfer from King & Wood to Duane Morris. Id. at Exhibit D. As the $25,000 Initial Retainer Fee sent by King & Wood, acting on behalf of ZSTN, King & Wood had possession or custody of monies and/or property worth at least $25,000 that belonged to ZSTN and that ZSTN had an interest in.

29.      Furthermore, annexed as part of the Duane Morris Declaration is a copy of the Engagement Letter ("Engagement letter") between Duane Morris and ZSTN, dated March 12, 2013. Id. at Exhibit C. Pursuant to the Engagement Letter, Duane Morris states that they "may at any time request" similar fees, in addition to the $25,000 Initial Retainer Fee, for any professional fees associated with their representation of ZSTN. The Duane Morris Motion to Dismiss notes that "the [Initial] [R]etainer [Fee]... has been applied." See Graff Aff., **Exhibit 17** (Duane Morris Motion to Dismiss), Footnote 3. Thus, on information and belief, King & Wood has made transfers *in addition to* the Initial Retainer Fee on behalf of ZSTN, including but not limited to transfers that finance ZSTN's litigation expenses in the U.S. As Hong Kong counsel for ZSTN, King & Wood indisputably had knowledge that these transfers of ZSTN funds violated the Receiver Order. King & Wood also indisputably had knowledge that ZSTN has yet to satisfy its obligations to Mr. Deutsch as Judgment Creditor.

**Mr. Seiden's Fees and Expenses Remain Unpaid**

30.      Under the Receiver Order, "[p]ayment of the fees and expenses of the receiver and any experts or advisors retained by the receiver shall have *priority* over all other obligations,

payments or disbursements of [ZSTN]." See Graff Aff., **Exhibit 13** (emphasis added). The Receiver Order clearly and unambiguously prioritizes payment of the Mr. Seiden's fees over all other obligations, payments or disbursements of ZSTN, including ZSTN funds that King & Wood transferred to Duane Morris. However, ZSTN has yet to satisfy its obligations to Mr. Seiden.

**ZSTN Has Yet to Satisfy Its Obligations to Mr. Deutsch**

31.    As Hong Kong counsel for ZSTN, King & Wood indisputably had knowledge of the Delaware Judgment and that ZSTN has yet to satisfy its obligations to Mr. Deutsch. King & Wood's fraudulent conveyance of ZSTN funds intentionally hinders and delays ZSTN's eventual payment of the receiver's fees and expenses and entire satisfaction of Mr. Deutsch' Judgment, and is a blatant disregard of the Delaware Judgment, this Court, and the U.S. judicial system.

## FIRST CAUSE OF ACTION
(Fraudulent Conveyance (Debtor Creditor Law §276))

32.    N.Y. DEBT. & CRED. Law §276 (2013) provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

33.    As Hong Kong counsel for ZSTN, King & Wood indisputably had knowledge of the Receiver Order that prioritizes payment to Mr. Seiden as Receiver. In violation of this clear and unambiguous Order, King & Wood has distributed *at least* $25,000 of ZSTN funds, while acting on ZSTN's behalf, to Duane Morris while Mr. Seiden's fees and expenses remains unpaid. As Duane Morris has already applied the $25,000 Initial Retainer Fee, it is believed that King & Wood has disbursed additional ZSTN funds to Duane Morris to finance ZSTN's legal expenses and that King & Wood will continue to do so. These conveyances were done intentionally in

nydocs1-1016757.3

knowing violation of the Receiver Order to hinder and delay the payments that ZSTN owes Mr.

Seiden, the Receiver, and Mr. Deutsch, the Judgment Creditor.

34.     In light of this violation of the Receiver Order, this petition seeks an Order

holding that the transfer of ZSTN's assets by King & Wood, acting on behalf of ZSTN, including

but not limited to the Initial Retainer Fee, are void and/or should otherwise be set aside as

fraudulent conveyances, and should be turned over to Petitioners.

## SECOND CAUSE OF ACTION
### (Reasonable Attorney's Fees (Debtor & Creditor Law § 276–a))

35.     "If 'the plaintiff established an actual intent to defraud, it is also entitled to

recover a reasonable attorney's fee.'" Doubet, LLC v. Trustees of Columbia Univ. in City of

New York, 32 Misc. 3d 1209(A), 934 N.Y.S.2d 33 (N.Y. Sup. Ct. 2011). Debtor & Creditor Law

§ 276–a also provides that:

> "in an action or special proceeding brought by a creditor ... to set
> aside a conveyance by a debtor, where such conveyance is found to
> have been made by the debtor and received by the transferee with
> actual intent, as distinguished from intent presumed in law, to
> hinder, delay or defraud either present or future creditors, in which
> action or special proceeding the creditor ... shall recover judgment,
> the justice ... shall fix the reasonable attorney's fees of the creditor
> ..."

36.     In light of King & Wood's intentional fraudulent conveyance, Petitioners move to

recover reasonable attorney's fees pursuant to Debtor & Creditor Law § 276–a.

## THIRD CAUSE OF ACTION
### (Turnover ZSTN monies and/or property (CPLR §5225(b)))

37.     CPLR §5225(b) provides that:

> Upon a special proceeding commenced by a judgment creditor, against a
> person in possession or custody of money or other personal property in
> which the judgment debtor has an interest, or against a person who is a
> transferee of money or other personal property from the judgment debtor
> . . . the court shall require such person to pay the money, or so much of it
> as is sufficient to satisfy the judgment to the judgment creditor and, if the

12

amount to be so paid is insufficient to satisfy the judgment, to delivery any other personal property, or so much of it as is sufficient to satisfy the judgment . . .

38.   "A New York court has the authority to issue a turnover order [pursuant to CPLR 5225(b)] pertaining to extraterritorial property, if it has personal jurisdiction over a judgment debtor in possession of the property." Koehler v. Bank of Bermuda, 12 N.Y. 3d 533, 540 (N.Y. 2009).

39.   More importantly, "the principle that a New York court may issue a judgment ordering the turnover of out-of-state assets is not limited to judgment debtors but applies equally to garnishees." Id at 541.

40.   Therefore, since Garnishee, King & Wood, maintains an office in the state of New York, this Court may order Garnishee, which upon information and belief is in possession of property of the Judgment Debtor, ZSTN, to turn over such property to Petitioners in satisfaction, or partial satisfaction, of the Judgment. Moreover, the Court may order the Garnishee, if in possession of property of the Judgment Debtor, even if located outside the State of New York to bring such property into the jurisdiction of the Court in order to satisfy the Judgment. See Koehler, 12 N.Y. 3d 533 (a court sitting in New York that has personal jurisdiction over a garnishee bank can order the bank to produce stock certificates located in Bermuda).

41.   Pursuant to CPLR §§5222, 5224, 5225, 5227 and/or other applicable sections of the CPLR, Petitioners have or will promptly serve subpoenas and restraining notices ("Restraining Notices") upon King & Wood as Garnishees of the Judgment Debtor, ZSTN. The Restraining Notices issued pursuant to CPLR §5222 seek to restrain Garnishee from transferring or allowing to be transferred or otherwise interfering with any and all property in which the

13

Judgment Debtor has or may have an interest, and over which Garnishee exercise possession or control, whether such property is located within or outside the State of New York.

42.     Further, pursuant to CPLR §6203(5), any and all funds transferred from ZSTN to King & Wood on May 13, 2013, and any other obligations, payments or disbursements from ZSTN to King & Wood are subject to attachment.

43.     As established by the documentary evidence presented herewith: (a) Petitioners have a cause of action; (b) grounds for attachment under CPLR §6201 exist; (c) it is probable that Petitioners will succeed on the merits of this post-judgment matter; and (d) given the post-judgment nature of this matter, Petitioners are unaware of any counterclaims to Petitioners' collection of the Judgment.

44.     Further, pursuant to CPLR §6210, "upon notice for an order of attachment, the court may...grant a temporary restraining order prohibiting the transfer of assets by a garnishee..."

45.     Petitioners have a substantial likelihood of success on the merits of the substantive relief requested herein, and, therefore, the Court should award injunctive relief enjoining, restraining and prohibiting ZSTN and King & Wood, from transferring, encumbering, disposing of or otherwise interfering with or permitting others to do the same with respect to assets in which the Judgment Debtor, ZSTN has an interest.

46.     Petitioners have no adequate remedy at law.

47.     Pursuant to CPLR § 6220, and upon entry of an Order of Attachment and a temporary restraining order pursuant to CPLR § 6201 and 6210, the Court should also order disclosure by ZSTN and King & Wood as to any additional property in which the Judgment Debtor, ZSTN has an interest to help satisfy the Judgment.

## CLAIM FOR RELIEF

**WHEREFORE,** Petitioners respectfully requests the following relief pursuant to Federal Rule of Civil Procedure 69, N.Y. CPLR §§5225(b), 5227 and/or 5228:

1.      This Court enter an order directing the Garnishee, King & Wood, to turn over to the Court or Petitioners all assets, whether located within or outside the State of New York, in its possession, custody or control that belong, legally or equitably, to the Judgment Debtor, ZSTN.

2.      The Court enter an Order attaching any and all retainer funds, and subsequent funds tendered by King & Wood to Duane Morris, wherever they are located, in which the Judgment Debtor, ZSTN has an interest.

3.      The Court enter an Order requiring disclosure of any and all non-privileged information in possession or control of King & Wood pertaining to ZSTN's assets to help satisfy the Judgment, including but not limited to disclosure of any accounts that hold ZSTN funds.

4.      The Court enter an Order holding that the transfers of ZSTN assets by King & Wood, acting on behalf of ZSTN, including but not limited to the Initial Retainer Fee, are void and/or should otherwise be set aside as they are fraudulent conveniences, and should be turned over to Petitioners.

5.      That this Court, pursuant to CPLR 5222(i), relieve Petitioners of compliance with that provision and thus allow attachment of all property of Judgment Debtor, as the protection of CPLR 5222(i) is unnecessary for the reasonable requirement of the Judgment Debtor.

6.      The Court retain jurisdiction over this matter for any further or supplemental proceedings as may be necessary in order to satisfy the debt of Judgment Debtor ZSTN to Petitioner, including, but not limited to, order(s) compelling additional respondents and/or garnishees within the jurisdiction of this Court and in the possession of the property of Judgment

Debtor, ZSTN to turn over such property, wherever located, in order to satisfy the debt of ZSTN owed to Petitioner.

  7.    Any other further relief as this Court deems to be necessary and just.

DATED this 5th day of August, 2013.

DAVID GRAFF
SHVETA KAKAR

ANDERSON KILL & OLICK P.C.
1251 Avenue of the Americas
New York, NY 10020
Ph: (212) 278-1000
Fax:(212) 278-1733
*Attorneys for Petitioners*

nydocs1-1016757.3

## VERIFICATION

**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Robert Seiden, being duly sworn, deposes and says:

That I am the Receiver and a Petitioner in this turnover proceeding, that I am acquainted with the facts, having read the foregoing petition and the exhibits attached, and know the contents thereof, that the same is true to my own knowledge, except as to matters therein stated to be alleged on information and belief, and that as to those matters I believe them to be true.

_____
Robert Seiden
Court-Appointed Receiver in
Peter E. Deutsch v. ZST Digital Networks, Inc.

Sworn to before me this 5th
day of August      2013

Peter Cook, Esq.

PETER A COOK
Notary Public - State of New York
No. 02CO6133486
Qualified in New York County
My Comm. Expires Sep. 19, 2009 2015

17