DAVID GRAFF (DG7011)
SHVETA KAKAR (SK0311)
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, New York 10020
Dgraff@andersonkill.com
Skakar@ andersonkill.com

*Attorneys for Petitioners Peter E. Deutsch and*
*Receiver Robert Seiden*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER E. DEUTSCH,<br><br>     Plaintiff/Petitioner, and<br><br>RECEIVER ROBERT SEIDEN,<br><br>     Plaintiff/Petitioner,<br><br>vs.<br><br>ZST DIGITAL NETWORKS, INC.,<br><br>     Defendant/Respondent,<br><br>and<br><br>KING & WOOD MALLESONS,<br><br>     Garnishee. | **AFFIRMATION IN SUPPORT OF VERIFIED PETITION FOR SPECIAL PROCEEDING AND TURNOVER OF JUDGMENT DEBTORS' PROPERTY, INCLUDING PROPERTY HELD BY GARNISHEE**<br><br>Case No. |

I, David Graff, affirm under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.    I am a Shareholder at Anderson Kill & Olick P.C., attorneys for Petitioners Peter E. Deutsch ("Judgment Creditor" or "Mr. Deutsch") and Receiver Robert Seiden ("Receiver" or "Mr. Seiden") (collectively "Petitioners"). I have personal knowledge of the facts herein and make this affirmation in support of Petitioners' Verified Petition for Special Proceeding and Turnover of Judgment Debtors' Property, Including Property Held by Garnishee.

2.    On April 6, 2012, Respondent ZST Digital Networks, Inc. ("ZSTN" or the

"Company" or "Respondent" or "Judgment Debtor") announced its intention to voluntarily delist from the NASDAQ stock exchange. See **Exhibit 1** (Press Release dated April 6, 2012).

 3. On August 13, 2012, Respondent filed a Form 15 with the SEC terminating its registration under Sec 12(g) of the Securities and Exchange Act of 1934. Respondent had, so to speak, "gone dark." See **Exhibit 2**.

 4. ZSTN's decision to delist and "go dark" is in line with a disturbing and insidious trend among valuable and operating Chinese companies which go dark to intentionally depress the value of the stock to ultimately facilitate an insider-led privatization transaction which has recently been highlighted in the Wall Street Journal. See **Exhibit 3** (Tide Turns After a Flood of Chinese Listings, WSJ Dec. 5, 2012).

 5. On or about September 20, 2012, I sent a demand letter to Respondent's CFO, Henry Ngan requesting inspection of Respondent's books and records. A true and correct copy of said letter is annexed hereto as **Exhibit 4**.

 6. In breach of Section 220 of Delaware General Corporation Law ("D-GCL"), ZSTN failed to respond to the Demand within five business days. Further, by letter dated October 16, 2012, albeit ZSTN acknowledged Mr. Deutsch's right to inspect the books and records, it informed him that it would not produce its books and records in Delaware, where the Company is incorporated, even though it was required to do so under Delaware law. Nor would they produce them in New York which is mutually convenient because the Company has an investor liaison office there and Mr. Deutsch's counsel is located there as well. Instead, ZSTN unreasonably mandated that Mr. Deutsch travel to China to exercise his statutory right to inspect the books and records. See **Exhibit 5** (correspondence between Mr. Deutsch's and the Respondent's counsel, Pillsbury Winthrop LLP).

7.      As a result, Mr. Deutsch was forced to commence an action before the Delaware Chancery Court by filing a complaint pursuant to 8 Del. C. §220 seeking expedited adjudication on Respondent's failure to allow inspection of its books and records. See **Exhibit 6.**

8.      Respondent was duly served with a copy of the Summons. See **Exhibit 7**.

9.      Thereafter, Delaware Chancery Court convened a conference call between me and Respondent's temporarily designated local Delaware counsel.   However, despite being represented officially by Pillsbury Winthrop LLP originally, and unofficially by different Delaware counsel on the Court conference call, ZSTN did not answer the complaint and intentionally defaulted.  As a result of Respondent's default, on December 11, 2012, Delaware Chancery Court issued an Order requiring ZSTN to produce its books and records for inspection in Delaware on or before December 28, 2012.  See **Exhibit 8** ("Books and Records Order").

10.     Respondent was duly served with the Books and Records Order.  See **Exhibit 9**. ZSTN never complied.

11.     In response to Respondent's failure to obey the Chancery Court's Books and Records Order, Mr. Deutsch filed a motion for contempt seeking: (i) redemption of Mr. Deutsch's shares at fair market value; (ii) attorney's fees and costs, and; (iii) the appointment of a receiver to effectuate the Court's order. Once again, ZSTN defaulted in its appearance. Thus, by Order dated March 20, 2013, the Hon. J. Travis Laster granted Mr. Deutsch's motion.  The Order awarded Mr. Deutsch the option to "put" his shares in the company at the last reported book value of $8.21/share and to appoint a receiver for the purpose of enforcing Respondent's compliance with the Court's orders. See **Exhibit 10** ("Delaware Order and Judgment").

12.     The Delaware Chancery Court's decision, ordering a "put" at book value for Mr. Deutsch's shares ascertained from its last reported financials with the SEC in 2011, was based on

the inability of investors like Mr. Deutsch to make buy/sell decisions in an informational vacuum for a stock in an illiquid market -- a result created by ZSTN's "going dark." The Court's decision also implicitly recognized, the widely reported, growing and disturbing trend among Chinese companies like ZSTN that have "gone dark." Operational and valuable Chinese companies with stellar audited financial reports certified under Sarbanes Oxley and filed with the SEC suddenly "go dark" to deceive bondholders and equity holders in the U.S. that the company no longer has value and then go private on the cheap in China. Indeed, as the Wall Street Journal recently reported:

> [T]he era of reverse mergers — a back door route to the securities market that involves combining a private company with an inactive, publicly traded shell — may have ended. Another has begun: Chinese companies going private.

See **Exhibit 3**.

13. Shortly thereafter, Respondent was duly served with the Contempt Order and Judgment. See **Exhibit 11**.

14. On March 26, 2013, Mr. Deutsch exercised his 'put' option for all but 100 of his shares, yielding a sum of $32,277,368.70 which is now due and owing from the ZSTN to the Mr. Deutsch. See **Exhibit 12.**

15. Subsequently, on or about March 28, 2013 the Delaware Court of Chancery appointed the Receiver to, *inter alia*, take all actions necessary to ensure ZSTN's compliance with the Orders of the Court of Chancery. See **Exhibit 13** ("Receiver Order"). Under the Receiver Order, "[p]ayment of the fees and expenses of the receiver and any experts or advisors retained by the receiver shall have *priority* over all other obligations, payments or disbursements of [ZSTN]."

16. Petitioners then moved by summary judgment in lieu of complaint to domesticate

Mr. Deutsch's $32,277,368.70 judgment in the Southern District of New York. On May 30, 2013, the Honorable Robert Patterson entered judgment in Mr. Deutsch's favor thereby domesticating the Delaware judgment in New York. See **Exhibit 14** (the "Judgment").

17.    To date, Respondent has failed to pay the Mr. Deutsch the $32,277,368.70 that is due and owed.

18.    King & Wood serves as ZSTN's counsel in Hong Kong, and has received substantial legal fees in knowing violation of the Receiver Order. On or about May 13, 2013, King & Wood, "acting on behalf of ZSTN,"[1] engaged the law firm Duane Morris LLP ("Duane Morris") to represent ZSTN in this action in the U.S. See **Exhibit 15** (ZSTN's Emergency Motion for Continuance); see also, Docket for Deutsch et. al. v. ZST Digital Networks Inc., Case No.: 13-cv-02533, Document Number 20.

19.    In violation of the Receiver Order that prioritizes payment to Mr. Seiden as Receiver, on May 13, 2013, King & Wood, acting on behalf of ZSTN, wired $25,000 as a retainer fee ("Initial Retainer Fee") to Duane Morris to provide legal services in connection with Deutsch et. al. v. ZST Digital Networks Inc., Case No.: 13-cv-02533. See **Exhibit 16** (Duane Morris's Declaration in Support of Motion to Dismiss ("Duane Morris Declaration"), ¶6); see also Deutsch et. al. v. ZST Digital Networks Inc., Case No.: 13-cv-04571, Document 13, ¶6.

---

[1] Annexed as Exhibit "A" to ZSTN's Emergency Motion was the affirmation of J. Many Parks dated May 14, 2013 ("Parks Affirmation"). Paragraph 2 of the Parks Affirmation affirms that King and Wood was "acting on behalf of ZSTN."

20.     The Duane Morris Motion to Dismiss notes that "the [Initial] [R]etainer [Fee]... has been applied." See **Exhibit 17** (Duane Morris's Motion to Dismiss, Footnote 3); see also Deutsch et. al. v. ZST Digital Networks Inc., Case No.: 13-cv-04571, Document 14. Thus, on information and belief, King & Wood has made transfers *in addition to* the Initial Retainer Fee on behalf of ZSTN, including but not limited to transfers that finance ZSTN's litigation expenses in the U.S.

Executed:     August 5, 2013
              New York, New York

David Graff

{10860131;1}
nydocs1-1016759.1