UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER E. DEUTSCH,<br><br>        Plaintiff/Petitioner, and<br><br>RECEIVER ROBERT SEIDEN,<br><br>        Plaintiff/Petitioner,<br><br>vs.<br><br>ZST DIGITAL NETWORKS, INC.,<br><br>            Defendant/Respondent,<br><br>and<br><br>KING & WOOD MALLESONS,<br><br>        Garnishee. | **OPPOSITION TO MOTION TO DISMISS**<br><br>Case No.      13-CV-5460<br><br><br>(Filed Electronically on August 26, 2013) |

**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO
KING & WOOD MALLESONS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 2

I.      The Delaware Judgment Has Been Domesticated in the State of New York ................... 2

II.     King & Wood, Acting on Behalf of ZSTN, has transferred *at Least* $25,000 of ZSTN 's Assets to Duane Morris ........................................................................ 3

III.    King & Wood Has Knowingly Violated the Receiver Order ............................................ 4

ARGUMENT ......................................................................................................... 4

IV.     Jurisdiction is Proper ........................................................................................ 4

        a.      Standard For Motion To Dismiss under 12(b)(2) ................................... 4

        b.      King & Wood's Reliance on the Swiss verein Structure to Refute Jurisdiction is "Superficial" ................................................................. 5

        c.      General Jurisdiction Exists and There is No Violation of Due Process ................. 8

                i.      General Jurisdiction Does Exist Under CPLR § 301 ................................ 9

                ii.     The Exercise of Personal Jurisdiction Would Not Offend Due Process ............... 9

V.      The Petition States Plausible Claims to Survive a 12(b)(6) Motion to Dismiss and Meets Rule 9(b)'s Particularity Requirement ................................................ 10

        a.      Standard For Motion To Dismiss under 12(b)(6) ................................. 10

        b.      The $25,000 Retainer Transferred by King & Wood Is Property of ZSTN ........ 11

                i.      Engagement Letter ...................................................................... 11

                ii.     Zhong Bo and Xue Na Are ZSTN .................................................. 12

                iii.    Correspondence from King & Wood States it Represents ZSTN Not Xue Na and Zhong Bo ............................................................ 14

        c.      Petitioner's Pled Fraud with Particularity As King & Wood Had Inherent Knowledge it was in Violation of the Receiver Order ................................ 15

        d.      Payment to the Receiver is Prioritized Over the Transfer by King & Wood ....... 17

VI.     Incorporation of Duane Morris's Non-Meritorious Arguments ....................................... 18

        CONCLUSION ........................................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

CASES

A.I. Trade Finance, Inc. v. Petra Bank,
    989 F.2d 76 (2d Cir. 1993)..............................................................................4

Boston & M. R. R. v. Delaware & Hudson Co.,
    238 A.D. 191, 264 N.Y.S. 470 (1933) ...........................................................17

Bradley v. Staubach,
    2004 U.S. Dist. LEXIS 6584 (S.D.N.Y. Apr. 12, 2004)..............................9, 10

Cromer Finance Ltd. v. Berger,
    00-cv-2284, 2002 WL 826847 (S.D.N.Y 2002) ...........................................6, 7

Daval Steel Products v. M.V. Juraj Dalmatinac,
    718 F.Supp. 159 (S.D.N.Y. 1989) ...................................................................8

Deutsch et. al. v. ZST Digital Networks Inc.,
    Case No.: 13-CV-02533....................................................................................3

Deutsch et. al. v. ZST Digital Networks Inc. et. al.,
    Case No.: 13-cv-03781 ....................................................................................2

Distefano v. Carozzi North America, Inc.,
    286 F.3d 81 (2d Cir. 2001)...............................................................................4

Grant v. A.B. Leach & Co.,
    280 U.S. 351, 50 S. Ct. 107, 74 L. Ed. 470 amended, 281 U.S. 689, 50 S. Ct. 236, 74
    L. Ed. 1119 (1930)..........................................................................................18

Hernandez v. Goord,
    312 F. Supp. 2d 537 (S.D.N.Y. 2004)........................................................10, 11

Howard v. Klynveld Peat Marwick Goedeler,
    977 F.Supp. 654 (S.D.N.Y. 1997) ...................................................................7

In re Parmalat Secs. Litig.,
    594 F.Supp.2d 444 (S.D.N.Y. 2009)................................................................7

Marine Midland Bank N.A. v. Miller,
    664 F.2d 899 (2d Cir. 1981).........................................................................7, 8

Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.,
    84 F.3d 560 (2d Cir. 1996)...............................................................................4

## TABLE OF AUTHORITIES (Cont'd)

Page

Ratner ex rel. JMV Fixed Income Arbitrage Performance Partners, Ltd. v. UMB Bank,
   N.A.,
   08-0495-CV-W-HFS, 2008 WL 3834075 (W.D. Mo. Aug. 13, 2008)....................................18

Reingold v. Deloitte Haskins & Sells,
   599 F.Supp. 1241 (S.D.N.Y. 1984) ........................................................................................7

Seldon v. Direct Response Technologies, Inc.,
   2004 U.S. Dist. LEXIS 5344 (S.D.N.Y. Mar. 30, 2004) ........................................................9

Walker v. City of New York,
   974 F.2d 293 (2d Cir. 1992)..................................................................................................11

Whitaker v. American Telecasting, Inc.,
   261 F.3d 196 (2d Cir. 2001)....................................................................................................4

Wolfe v. Illini Fed. Sav. & Loan Ass'n,
   158 Ill. App. 3d 321, 511 N.E.2d 828 (1987) ......................................................................18

STATUTES

CPLR § 301.....................................................................................................................................9

CPLR § 3213.................................................................................................................................17

Fed.R.Civ.P. 12(b)(2).....................................................................................................................4

Fed.R.Civ.P. 12(b)(6)...................................................................................................................10

Fed.R.Civ.P.69..............................................................................................................................17

## PRELIMINARY STATEMENT

Peter E. Deutsch ("Judgment Creditor" or "Mr. Deutsch") and Receiver Robert E. Seiden ("Mr. Seiden" or "Receiver") (collectively "Petitioners"), by and through its attorneys, Anderson Kill, P.C., submit this Opposition to the Motion to Dismiss submitted by King & Wood Mallesons ("King & Wood" or "Garnishee"), pursuant to Federal Rules of Civil Procedure 69, N.Y. Civil Practice Law and Rules ("CPLR") Articles 4 and 52.

This turnover proceeding arises out of ZST Digital Networks, Inc.'s ("ZSTN" or "ZST" or "Judgment Debtor") failure to pay a $32,277,368.70 final judgment entered against it and in favor of Mr. Deutsch in the Delaware Chancery Court on March 20, 2013 (the "Delaware Judgment"). The Delaware Order also provided for the appointment of a receiver for the purpose of enforcing ZSTN's compliance with said Judgment ("Receiver Order"). On May 30, 2013, the Honorable Robert Patterson of the Southern District of New York domesticated the Delaware Judgment[1].

As counsel for ZSTN, King & Wood indisputably had knowledge of the Receiver Order that prioritizes payment to Mr. Seiden as Receiver. Under the Receiver Order, "[p]ayment of the fees and expenses of the receiver and any experts or advisors retained by the receiver shall have *priority* over all other obligations, payments or disbursements of [ZSTN]." In direct violation of this clear and unambiguous Order, King & Wood fraudulently transferred $25,000 of ZSTN funds to Duane Morris, as an initial retainer for legal services to be rendered ("Initial Retainer Fee"), while Mr. Seiden's fees remain unpaid. Furthermore, as Duane Morris has

---

[1] For the Court's convenience, annexed to the Supplemental Declaration of David Graff ("Graff Dec.") as **Exhibit 1** is a proposed order further clarifying that judgment was indeed entered in favor of Plaintiff Peter E. Deutsch in the amount of $32,277,368.70 on May 30, 2013 by this Court.

already applied the Initial Retainer Fee, it is believed that King & Wood transferred ZSTN funds *in addition* to the initial $25,000 payment, and will continue to violate the Receiver Order.

In light of this violation of the Receiver Order, the initial turnover petition seeks an Order holding that all ZSTN funds fraudulently transferred by King & Wood, including but not limited to the $25,000 Initial Retainer Fee, are void and should be clawed back and turned over to Petitioners.

Indeed, King & Wood's opposition is based on three wholly erroneous and unsupported contentions in an attempt to escape liability: (1) that jurisdiction is improper as King & Wood is a Swiss verein; (2) two individual "shareholders"—who happen to be ZSTN's highest level of management—not ZSTN were the source of the $25,000 payment; and, (3) Petitioner's failed to plead fraudulent conveyance with particularity. As these contentions are unsupported by both law and fact, this Court should deny King & Wood's motion to dismiss in the entirety and order that all fees in King & Wood's possession received from ZSTN and/or its officers be turned over to Petitioners immediately.

## STATEMENT OF FACTS

**I.     The Delaware Judgment Has Been Domesticated in the State of New York**

At a hearing on May 30, 2013, this Court Domesticated the Delaware Judgment. For the Court's convenience, annexed to the Declaration of David Graff as **Exhibit 1** is a proposed order further clarifying that judgment was indeed entered in favor of Plaintiff Peter E. Deutsch in the amount of $32,277,368.70. Furthermore, subsequent orders of the Court and Your Honor specifically acknowledge that the Delaware Judgment was domesticated by Your Honor on May 30, 2013. See Graff Dec. **Exhibit 3** (Order for Turnover of Judgment Debtor's Property Held by Garnishee HSBC ("HSBC Order")); see also Deutsch et. al. v. ZST Digital Networks Inc. et. al., Case No.: 13-cv-03781, Document Number 8.

## II.   **King & Wood, Acting on Behalf of ZSTN, has transferred *at Least* $25,000 of ZSTN 's Assets to Duane Morris**

King & Wood Mallesons serves as ZSTN's counsel in Hong Kong. Prior to the entry of judgment in the Southern District of New York, on or about May 13, 2013, King & Wood, "acting on behalf of ZSTN,"[2] engaged Duane Morris law firm to represent ZSTN in Deutsch et. al. v. ZST Digital Networks Inc., Case No.: 13-CV-02533. See Graff Dec., **Exhibit 4** (ZSTN's Emergency Motion for Continuance).

On May 13, 2013, King & Wood, acting on behalf of ZSTN, transferred the $25,000 Initial Retainer Fee to Duane Morris to provide legal services pursuant to the engagement. See Graff Dec., **Exhibit 5** (Duane Morris Declaration in support of Motion to Dismiss ("Duane Morris Declaration")) ¶6. Indeed, annexed as part of the Duane Morris Declaration is a copy of the $25,000 wire transfer from King & Wood to Duane Morris. See Id. at Exhibit D.

Furthermore, annexed as part of the Duane Morris Declaration is a copy of the Engagement Letter ("Engagement Letter") between Duane Morris and ZSTN dated May 12, 2013. See Graff Dec. **Exhibit 6** (Engagement Letter). Pursuant to the Engagement Letter, Duane Morris states that they "may at any time request" similar fees, in addition to the $25,000 Initial Retainer Fee, for any professional fees associated with their representation of ZSTN. See Id. The Duane Morris Motion to Dismiss notes that "the [Initial] [R]etainer [Fee]... has been applied." See Graff Dec., **Exhibit 7** (Duane Morris Motion to Dismiss), Footnote 3. Thus, on information and belief, King & Wood has transferred ZSTN funds to Duane Morris *in addition to* the Initial Retainer Fee.

---

[2] Annexed as Exhibit "A" to ZSTN's Emergency Motion was the Affirmation of J. Many Parks dated May 14, 2013 ("Parks Affirmation"). Paragraph 2 of the Parks Affirmation affirms that King & Wood was "acting on behalf of ZSTN."

Moreover, pursuant to the Engagement Letter, "[r]etainers and other funds that **belong to ZST** will be held without interest on account by the firm, until disbursed. Such funds may be applied in payment of **ZST's account** for fees owed or other expenses incurred on ZST's behalf." See Graff Dec., **Exhibit 6.** The Engagement letter acknowledges that the retainer funds "belong to ZSTN."

## III.   King & Wood Has Knowingly Violated the Receiver Order

The Receiver Order clearly and unambiguously prioritizes payment of the Mr. Seiden's fees over all other obligations, payments or disbursements of ZSTN, including ZSTN funds that King & Wood transferred Duane Morris. See Graff Dec. **Exhibit 8** (Receiver Order). However, ZSTN has yet to satisfy its obligations to Mr. Seiden. As such, King & Wood's transfer of ZSTN assets was in direct violation of the Receiver Order. Moreover, as Hong Kong counsel for ZSTN, King & Wood indisputably had knowledge of the Delaware Judgment and that ZSTN has yet to satisfy its obligations to Mr. Deutsch.

## ARGUMENT

## IV.   Jurisdiction is Proper

### a.   Standard For Motion To Dismiss under 12(b)(2)

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(2), petitioners are "required to make only a prima facie showing that [defendant] is amenable to personal jurisdiction in New York. A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993); Metropolitan Life Insurance Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566-7 (2d Cir. 1996); Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). All allegations are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party. A.I. Trade Finance, Inc., at 79-80; Distefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir.

4

2001); Self International (HK)  Ltd. v. La  Salle National Bank, Chicago, 01 CV 4291 (RCC) 2002 U.S. Dist. LEXIS 5631, at 4 (S.D.N.Y. 2002) ("Where the court relies on pleadings and affidavits, rather than conducing an evidentiary hearing, the plaintiff need only make a prima facie showing that the exercise of jurisdiction is proper.  Moreover, the pleadings and affidavits are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor.")

As discussed in greater detail herein, Garnishee fails to assert sufficient law and facts to support its motion to dismiss and as such, its motion should be denied in the entirety.

**b.     King & Wood's Reliance on the Swiss verein Structure to Refute Jurisdiction is "Superficial"**

Garnishee alleges that Petitioner's basis for personal jurisdiction is "superficial." See Garnishee's Memorandum of Law pp. 9-10. This statement could not be farther from the truth. The only thing that is "superficial" in the instant proceeding is King & Wood's claim that its Hong Kong member firm is beyond this Court's jurisdiction and thus exempt from liability based on its purported Swiss verein structure.

In an attempt to escape liability, Garnishee alleges time and time again that "K&WM is not a global partnership. It is, rather, a network of separate partnerships and limited liability companies operating under a Swiss verein structure, with each member firm operating autonomously." See Declaration of James Y. Jiang at ¶2; see also, Declaration of Barbara Chiu at ¶2 and Garnishee's Memorandum of Law, Background Section B.  These allegations are false by King & Wood's own admissions on its website. Per King & Wood's website, it describes itself as a "fully integrated partnership" that is "headquartered in Beijing with offices in Shanghai, Shenzhen, Chengdu, Guangzhou, Chongqing, Hangzhou, Tianjin, Suzhou, Qingdao, Ji'nan, Hong Kong, Tokyo, Silicon Valley and New York, is one of the largest law firms in China. With

over 1200 lawyers, patent attorneys, and legal professionals, we provide comprehensive legal services to meet the diverse needs of our clients worldwide." See Graff Decl. **Exhibit 9**. The website then further states,

> King & Wood is committed to creating a *'one firm' culture*, in which our legal professionals draw on expertise and experience spanning practice areas and offices to deliver superior results efficiently. This culture has earned King and Wood Mallesons(PRC) an outstanding reputation both in China and abroad. Because of *our integrated culture* and excellent reputation, we are well positioned to become one of the leading full service law firms in Asia.

Id. (emphasis added). Indeed, a recent press release on its website describe King & Wood as a "global law firm." Id. **Exhibit 10** ("The combination continues to reshape the global legal industry with King & Wood Mallesons being the *only global law firm* which is headquartered in the Asia Pacific and focused on connecting Asia to the world and the world to Asia"). Moreover, despite claiming such a degree of separateness, multiple employees at King & Wood work out of more than one King & Wood office. Id. **Exhibit 11**. Notably, a Ms. Xuhua Huang and Mr. Rupert Li work out of both the Beijing and Hong Kong offices and a Ms. Susan Ning works out of both the Beijing and New York offices. Id. Thus, KWM Hong Kong is not as separate as it claims to be.

The only evidence King & Wood submits to support its contention that it is a "Swiss verein" is a declaration from a partner at King & Wood Hong Kong, a declaration from a partner at King & Wood, LLC and a bogus legal notice from its website. Indeed, the legal notice is nothing more than a smokescreen as it is completely contradicted by the continuum of information on King & Wood's website describing it as "fully integrated partnership" and "global law firm."

Moreover, this Court has held that a complaint will survive a motion to dismiss in the face of a Swiss verein jurisdictional challenge where there is evidence that an agency

6

relationship exists based on the business operations and structure of the firm. See <u>Cromer Finance Ltd. v. Berger</u>, 00-cv-2284, 2002 WL 826847, at *5 (S.D.N.Y 2002); <u>In re Parmalat Secs. Litig.</u>, 594 F.Supp.2d 444 (S.D.N.Y. 2009) (denying summary judgment as genuine issues of material fact existed as to whether Italian member was an agent of organization under New York law with respect to the Italian conglomerate engagement).

<u>Cromer Finance Ltd.</u> is particularly significant as this Court found that "[i]t is fair to infer, in the context of pleading standards, that the representations made to third parties bore a relationship to the way Deloitte [organization claiming Swiss verein] actually conducted its business." 2002 WL 826847 at *5. In analyzing the cases submitted by the party moving to dismiss based on the Swiss verein structure this Court found, "these cases, taken singly or together, do **not** indicate that statements made by a principal in marketing materials, and the inferences that can be drawn from them, particularly when combined with allegations based on other sources of evidence[3], may not be used to plead a conveyance of actual authority by the principal to an agent." <u>Id</u>.

Indeed, two of the same cases this Court found unconvincing in support of Deloitte's motion to dismiss in <u>Cromer Finance Ltd.</u> are relied upon by Garnishee. <u>Id</u>. (relying upon <u>Reingold v. Deloitte Haskins & Sells</u>, 599 F.Supp. 1241, 1249 (S.D.N.Y. 1984) and <u>Howard v. Klynveld Peat Marwick Goedeler</u>, 977 F.Supp. 654 (S.D.N.Y. 1997)). The rest of the

---

[3] In <u>Cromer Finance Ltd.</u> the Plaintiff's had additional evidence that an agency relationship existed between Deloitte and its Bermuda based member firm. Here, there is additional evidence outside of the marketing materials as multiple employees of King & Wood work for more than one King & Wood office. However, should the Court find an issue of fact exists as to jurisdiction based on Garnishee's claims of being a Swiss verein, Petitioners anticipate additional evidence supporting that an agency relationship exists between King & Wood's member firms, specifically King & Wood LLC and King and Wood Hong Kong, will be procured through discovery.   See <u>Marine Midland Bank N.A. v. Miller</u>, 664 F.2d 899, 904 (2d Cir. 1981) ("district court has 'considerable procedural leeway' in deciding motion to dismiss for lack of personal jurisdiction, and may permit discovery of jurisdictional facts").

7

cases cited by Garnishee in support of their motion to dismiss are distinguishable as the defendant in each action is an accounting firm, and one pharmaceutical manufacturer, *not* a law firm. In this regard, law firms are exceptionally different as there are the unique overarching issues of conflicts and ethics. Here, Garnishee claims, "as separate business entities, KWM Hong Kong and KWM NYC do not share clients, profits and losses, or management." <u>See</u> Declaration of Barbara Chiu ¶2; <u>see also</u>, Garnishee's memorandum of law at p. 6 ("nor does KWM NYC have an attorney-client relationship with the clients of other member firms."). However, Garnishee does not submit any evidence to support this proposition. <u>See</u> <u>Daval Steel Products v. M.V. Juraj Dalmatinac</u>, 718 F.Supp. 159, 161 (S.D.N.Y. 1989) ("If the court, in deciding defendant's motion to dismiss, relies on pleadings and affidavits, instead of holding an evidentiary hearing, plaintiff need only present prima facie proof of jurisdiction[4].") Rather the evidence points otherwise as King & Wood has multiple employees claiming to work for more than one King & Wood office which would require some sort of conflict screening. <u>See</u> Graff Decl. **Ex. 11**. As such, it is respectfully submitted that any case law in the context of accounting firms be disregarded as inapplicable.

### c.   General Jurisdiction Exists and There is No Violation of Due Process

In ruling on a motion to dismiss for lack of personal jurisdiction, the court must decide two things: whether (1) "plaintiff has shown that the defendant is subject to personal

---

[4] Petitioner's have met their prima facie burden for jurisdiction as King & Wood, LLC does not dispute that its office is located in New York, New York. <u>See</u> Declaration of James Y. Jiang at ¶3. The only thing that is in dispute is whether or not King & Wood, LLC and King & Wood Hong Kong are related member firms. Although the evidence submitted herewith supports that King & Wood is not comprised of independent member firms, should this Court find an issue of fact does exist to this extent, limited discovery should be allowed for the purposes of establishing jurisdiction. <u>See</u> <u>Marine Midland Bank N.A. v. Miller</u>, 664 F.2d 899, 904 (2d Cir. 1981) ("district court has 'considerable procedural leeway' in deciding motion to dismiss for lack of personal jurisdiction, and may permit discovery of jurisdictional facts").

jurisdiction under the forum stat's laws" and (2) the "assertion of jurisdiction pursuant to the forum state's laws comports with the requirements of due process." Seldon v. Direct Response Technologies, Inc., 2004 U.S. Dist. LEXIS 5344, *8 (S.D.N.Y. Mar. 30, 2004). Petitioners meet both criteria.

### i.      General Jurisdiction Does Exist Under CPLR § 301

As Garnishee readily admits, the King & Wood entity located in New York, New York was properly served. See Garnishee's Memorandum of Law at p. 9. King & Wood maintains a continued and systematic business presence in New York. Although Garnishee states that King & Wood Hong Kong was not served, the declaration of Barbara Chiu submitted therewith states otherwise. See Declaration of Barbara Chiu at ¶9 ("The only time anyone from KWM Hong Kong ever discussed ZST with anyone from KWM NYC was after Petitioners e-mailed their Petition against King & Wood Mallesons to me on August 5, 2013. At that time, I contacted KWM NYC to determine whether service had been made"). Thus, there is no question that service and jurisdiction were proper.

### ii.     The Exercise of Personal Jurisdiction Would Not Offend Due Process

Contrary to Garnishees assertions, there would be no due process offense by asserting personal jurisdiction over King & Wood Hong Kong. This is supported through an analysis of the five part test submitted in Garnishee's papers. See Bradley v. Staubach, 2004 U.S. Dist. LEXIS 6584, *15-16 (S.D.N.Y. Apr. 12, 2004) (Five factors analyzed if personal jurisdiction is consistent with due process are: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the most efficient resolution of the controversy; and (5) the interests of the state in furthering substantial social policies.").

The burden on King & Wood Hong Kong is not "substantial." It is a law firm that is part of the "fully integrated partnership" of King & Wood. It is not an island upon itself as Garnishee purports it to be. King & Wood Hong Kong has engaged in conduct directed towards New York as it wired the funds that have been used for ZSTN's defense and upon information and belief continues to do so. As it fraudulently transferred funds on behalf of ZSTN—in violation of the Receiver Order—King & Wood Hong Kong should be forced "to defend a lawsuit half-way around the world." See Garnishee Memorandum of Law p. 13. Moreover, Mr. Seiden, the Receiver in the instant action, is a New York resident. As such, his interests in obtaining "convenient and effective relief" and in allowing for the most efficient resolution would be for the action to be here in New York. See Bradley v. Staubach, at *15-16 (factors 3-5).

Thus, based on the foregoing, Petitioner's respectfully submit that jurisdiction is proper.

## V.   The Petition States Plausible Claims to Survive a 12(b)(6) Motion to Dismiss and Meets Rule 9(b)'s Particularity Requirement

Garnishee's entire 12(b)(6) rests on two wholly erroneous propositions: (1) that the funds transferred by King & Wood came from two "shareholders" and not ZSTN; and, (2) Petitioners did not plead fraudulent conveyance with particularity. Garnishee attacks the petition stating "if Petitioners had any good faith basis for making this claim, it is not evident in the Petition." The only thing that lacks "good faith" is the outrageous facts Garnishee rests its 12(b)(6) motion to dismiss upon and as such should be denied as both a matter of law and fact.

### a.   Standard For Motion To Dismiss under 12(b)(6)

"In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally."

Hernandez v. Goord, 312 F. Supp. 2d 537, 542 (S.D.N.Y. 2004). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears **beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Walker v. City of New York, 974 F.2d 293, 298 (2d Cir. 1992) (emphasis added). "The review is limited, and the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. The court's function on a motion to dismiss is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Hernandez v. Goord, 312 F. Supp. 2d 537, 542 (S.D.N.Y. 2004).

In the instant action, the petition is more than legally sufficient as it states a plausible claim for fraudulent conveyance and does so with particularity.

### b.    The $25,000 Retainer Transferred by King & Wood Is Property of ZSTN

Garnishee makes the preposterous proposition that the petition should be dismissed as the funds transferred by King & Wood originated from two "shareholders" and not ZSTN. The evidence could not be more to the contrary.

### i.    Engagement Letter

On May 13, 2013, Duane Morris received the $25,000 Initial Retainer Fee from King & Wood, acting on behalf of ZSTN, to provide legal services pursuant to the engagement. See Graff Decl., **Ex. 5** (Duane Morris Declaration) ¶6. Indeed, annexed as part of the Duane Morris Declaration is a copy of the $25,000 wire transfer from King & Wood to Duane Morris. See Id. at Exhibit D.

Furthermore, annexed as part of the Duane Morris Declaration is a copy of the Engagement Letter between Duane Morris and ZSTN dated May 12, 2013. See Graff Decl., **Ex. 6**. Pursuant to the Engagement Letter, Duane Morris states that they "may at any time request"

similar fees, in addition to the $25,000 Initial Retainer Fee, for any professional fees associated with their *representation of ZSTN*. See Id. The Duane Morris Motion to Dismiss also notes that "the [Initial] [R]etainer [Fee]... has been applied." See Graff Decl., **Ex. 7** (Duane Morris Motion to Dismiss), Footnote 3. Thus, upon information and belief, Duane Morris has obtained ZSTN funds from King & Wood in addition to the Initial Retainer Fee.

Moreover, pursuant to the Engagement Letter, "[r]etainers and other funds that **belong to ZST** will be held without interest on account by the firm, until disbursed. Such funds may be applied in payment of **ZST's** account for fees owed or other expenses incurred on **ZST's behalf**." See Graff Decl., **Ex. 6**. Thus, the Engagement letter acknowledges that the retainer funds "belong to ZSTN." Id.

### ii.        Zhong Bo and Xue Na Are ZSTN

King & Wood through its counsel Duane Morris—the same attorneys who represent ZSTN—have now chosen to assert that two individuals, not ZSTN, were actually the source of the funds transferred by King & Wood. But King & Wood could hardly have chosen worse candidates to base this assertion upon as Zhong Bo and Xue Na are the ultimate ZSTN insiders.

Zhong Bo is the Chief Executive Officer and Chairman of the Board of Directors for ZSTN. See Graff Decl. **Exhibit 12** (Proxy Statement naming Zhong Bo as Chief Executive Officer and Chairman of Board of Directors). Moreover, Xue Na has even identified herself to this very Court as the "Deputy General Manager, Corporate Secretary, and President of Labor Union of ZST Digital Networks, Inc." See Graff Decl., **Exhibit 13** (Declaration of Xue Na dated May 14, 2013). Indeed, it was not until August 13, 2013 that Xue Na first identified herself as a shareholder of ZSTN when she submitted a motion to intervene to the Delaware Court of

Chancery.[5] Non-coincidentally, two days later through declarations of ZSTN's counsel, it was submitted to this Court that Xue Na and Zhong Bo as "individual shareholders" supplied the funds that were transferred by King & Wood, not ZSTN.

Further, there is direct evidence that Mr. Zhong Bo has been fraudulently transferring funds from ZSTN's subsidiary Everfair in direct violation of the Receiver order entered by the Delaware Court of Chancery. See Graff Decl., **Exhibit 16** (HSBC bank receipt). Assuming, *arguendo*, Mr. Zhong Bo did give King & Wood the retainer funds, said funds could have originated from ZSTN as Mr. Zhong Bo has been intermingling personal and corporate funds in direct violation of the receiver order entered by the Delaware Court of Chancery. As such, this is further evidence that the funds transferred by King & Wood likely originated from ZSTN and that any assertion otherwise is without merit.

The fraudulent HSBC transfer and last minute "shareholder" claim by Mr. Zhong Bo is part of his and Ms. Xue Na's continued efforts to obstruct the Receiver's efforts to identify and seize assets to satisfy the judgment.   Indeed, in May 2013, Ms. Xue Na blocked the Receiver's efforts to obtain ZSTN's books and records from its auditors Crowe Horwath (HK). See Graff Decl., **Exhibits 14 and 17**. Ms. Xue Na also impeded the Receiver's attempts to exercise control over ZSTN's wholly-owned subsidiary Everfair by, first threatening to sue the Receiver, and then by forcing the Receiver's appointees to the Everfair Board to hold an emergency general meeting (a formality under Hong Kong law) to remove her as a director. She then voluntarily chose not to attend the meeting. See Graff Decl., ¶17. Ms. Xue Na further blocked post judgment recovery efforts by instructing a large Chinese bank believing to hold

---

[5] The proceedings in the Delaware Court of Chancery are significant as the Court denied Xue Na's motion to intervene based on her alleged shareholder status. See Graff Decl., **Exhibit 15** (Order denying motion to intervene).

funds of ZSTN not to comply with the Receiver's request to change authorized bank signatories. All of which are in direct violation of the Receiver Order. Id. at ¶18.

Despite all of the foregoing evidence, Garinshee bases its 12(b)(6) motion to dismiss on the ludicrous assertion that, "The source of the $25,000 was not ZST, but Mr. Zhong and Ms. Xue[6], the two shareholders of ZST and members of ZST who retained KWM Hong Kong in connection with ZST's dispute with Deutsch."  See Declaration of Barbara Chiu at ¶7. Garnishee however does not submit a check, a bank receipt, a wire transfer, or any sort of documentary evidence to support this. The failure to submit any documentary evidence of the actual transfer not only completely invalidates the proposition that said funds originated with Mr. Zhong Bo and Xue Na as purported "shareholders," but it is also further evidence of ZSTN, Zhong Bo and Xue Na's continued efforts to obstruct the efforts of the Receiver. As such, this frivolous argument should be disregarded in its entirety.

### iii. Correspondence from King & Wood States it Represents ZSTN Not Xue Na and Zhong Bo

Additionally, King & Wood have submitted multiple letters stating that it represents ZSTN. See Graff. Decl. **Exhs**. 14 & 17 (Letters from King & Wood dated May 8, 2013); **Ex. 14** ("We act for Ms. Xue Na, Deputy General Manager and President of Labor Union of ZST Digital Network, Inc.. . ."); **Ex. 17** ("We act for the board of directors of ZST and refer to your letter to our client dated May 6, 2013."). Nowhere in these letters does it ever state that King & Wood is acting on behalf of or represents Xue Na and Zhong Bo in their individual capacities as shareholders. Rather, the letters plainly state that King & Wood represents ZSTN.

---

[6] No documentary evidence in this action, the underlying domestication proceedings or the Delaware proceedings has been submitted to support that Ms. Xue Na is indeed a shareholder of ZSTN. To the contrary, a proxy statement dated August 17, 2011, lists all management stockholders in which Ms. Xue Na is not listed. See Graff Decl. **Ex. 12**.

As such, King & Wood was acting on behalf of ZSTN and not Xue Na and Zhong Bo in their individual capacities as shareholders, as ZSTN is King & Wood's client.

Thus, based on the foregoing, it is respectfully submitted that Garnishee's 12(b)(6) motion to dismiss be denied in its entirety.

c.   **Petitioner's Pled Fraud with Particularity As King & Wood Had Inherent Knowledge it was in Violation of the Receiver Order**

As counsel for ZSTN, King & Wood indisputably had knowledge of the Receiver Order that prioritizes payment to Mr. Seiden as Receiver and accepted monies in violation of the Order. Under the Receiver Order, "[p]ayment of the fees and expenses of the receiver and any experts or advisors retained by the receiver shall have *priority* over all other obligations, payments or disbursements of [ZSTN]."   As such, any transfer of funds by King & Wood on behalf of ZSTN constitutes a fraudulent conveyance.

Indeed, the foregoing was pled with sufficient particularity in Petitioner's turnover petition. Specifically, paragraph 12 of the petition states

> Under the Receiver Order, "[p]ayment of the fees and expenses of the receiver and any experts or advisors retained by the receiver shall have priority over all other obligations, payments or disbursements of [ZSTN]. . . Receiver Order clearly and unambiguously prioritizes payment of the Mr. Seiden's fees over all other obligations, payments or disbursements of ZSTN, including ZSTN funds that King & Wood received from ZSTN and transferred to Duane Morris. However, ZSTN has yet to satisfy its obligations to Mr. Seiden. As Hong Kong counsel for ZSTN, King & Wood indisputably had knowledge that these transfers of ZSTN funds violated the Receiver Order.

See Declaration of James Y. Jiang, Exhibit A (Turnover Petition).  Thus, Petitioners sufficiently pled Garnishee's intent in facilitating the fraudulent transfer.

Further, the caselaw cited by King & Wood either supports Petitioner's claim of fraudulent conveyance or is distinguishable. Indeed, the Court in In re Sharp found that "actual fraudulent intent . . . may be inferred from circumstances surrounding the transaction, including

15

the relationship among the parties and the secrecy, haste, or unusualness of the transaction." 403 F.3d 43, 56 (2d Cir. 2005)(citing In re Kaiser, 722 F.2d 1574, 1582-83 (2d Cir. 1983)). Here, King & Wood's fraudulent intent is evidenced by its inherent knowledge of the Delaware Chancery Court's orders—including the Receiver Order—yet due to its relationship with ZSTN it still chose to transfer the retainer funds. Moreover, In re Sharp does not require that badges of fraud be present, rather it states that "the pleader is *allowed* to rely on badges of fraud to support his case. . ." Id. Royal Palm Senior Investors is distinguishable as the alleged fraudulent transfers are based completely on timing. 2009 U.S. Dist. LEXIS 57452, *1 (S.D.N.Y. 2009); see also infra Point d (Garnishee's assertion that the transfer occurred prior to the approval of the Receiver's costs is a collateral attack on the Receiver Order). In the instant action Petitioner's base their claim of fraudulent conveyance not only on timing, but also on the fact that King & Wood had inherent knowledge about a Court Order giving the receiver priority over funds and decision to transfer the monies anyway, in violation of a clear and direct Court Order.

Finally, as a matter of policy, King & Wood's contention that the transfer was not fraudulent because it was "an arm's length transaction; it was made in the ordinary course of business; the consideration was reasonable; and the funds became the property of Duane Morris upon receipt" is preposterous. See Garnishee's Memorandum of Law p. 15. This proposition amounts to a collateral attack on the Receiver Order as there is no carve out from the payment prioritization provision for fair market arm's length ordinary course transactions. The provision is clear in that payments to the Receiver receive first priority. See infra point d.

Thus, based on the foregoing, it is respectfully submitted Petitioner's pled fraudulent conveyance with particularity and Garnishee's motion to dismiss should be denied in

its entirety and all fees received from ZSTN or its officers in King & Wood's possession be turned over immediately to Petitioners.

### d.   Payment to the Receiver is Prioritized Over the Transfer by King & Wood

As counsel for ZSTN, King & Wood indisputably had knowledge of the Receiver Order[7] that prioritizes payment to Mr. Seiden as Receiver and accepted monies in violation of the Order. Under the Receiver Order, "[p]ayment of the fees and expenses of the receiver and any experts or advisors retained by the receiver shall have priority over all other obligations, payments or disbursements of [ZSTN]." See Graff Decl., **Exhibit 8**. Garnishee's position that the transfer is exempt from the prioritization provision of Receiver Order because the Chancery Court must first approve all expenses of the Receiver in effect writes that provision out of the Order, as it would allow all other creditors to be paid in advance of the Receiver. In essence, Garnishee's position is that ZSTN may commit as many fraudulent conveyances as it so pleases until the Chancery Court formally approves the Receiver's expenses. That surely cannot be the case.

King & Wood in effect is seeking to amend the Receiver Order by interposing a timing provision within the prioritization provision. As such, it constitutes a collateral attack on the Receiver Order, and as a matter of law, a Receiver Order cannot be assailed in a collateral proceeding. See Boston & M. R. R. v. Delaware & Hudson Co., 238 A.D. 191, 194, 264 N.Y.S. 470, 475-76 (1933) ("Where a receiver, appointed by a court of competent jurisdiction, sues, the

---

[7] Garnishee also states that Petitioner's did not move to domesticate the Receiver Order in the underlying proceedings. This statement is false. The opening paragraph of Plaintiff's motion for summary judgment states "Plaintiff, Peter E. Detusch and Receiver Robert E. Seiden ('Plaintiff'), by and through the undersigned attorneys, by and for its Motion for Summary Judgment in Lieu of Complaint pursuant ot Federal Rule of Civil Procedure 69 and CPLR § 3213 against Defendant for domesticating two [sic] Orders (the 'Books and Records Order', 'Contempt Order' and 'Receiver Order') (the 'Orders') rendered by the Court of Chancery of the State of Delaware ('Delaware Chancery Court') states as follows:". See Graff Decl. **Exhibit 2** (Plaintiff's Motion for Summary Judgment in Lieu of Complaint).

defendant in such suit cannot attack collaterally the validity of the receiver's appointment which can be litigated only in an action directly assailing the appointment."); Grant v. A.B. Leach & Co., 280 U.S. 351, 359, 50 S. Ct. 107, 110, 74 L. Ed. 470 amended, 281 U.S. 689, 50 S. Ct. 236, 74 L. Ed. 1119 (1930) ("[E]ven if the order appointing the receiver was erroneous and might have been vacated in part on a direct attack, ... plainly the validity of the appointment could not have been questioned by a collateral attack in another court."); Ratner ex rel. JMV Fixed Income Arbitrage Performance Partners, Ltd. v. UMB Bank, N.A., 08-0495-CV-W-HFS, 2008 WL 3834075 (W.D. Mo. Aug. 13, 2008) ("[T]he appointment of a receiver, if erroneous, is not subject to collateral attack in another court."); Wolfe v. Illini Fed. Sav. & Loan Ass'n, 158 Ill. App. 3d 321, 324, 511 N.E.2d 828, 830 (1987) ("Where a court has jurisdiction both of the subject matter and the necessary parties, its appointment of a receiver cannot be assailed in a collateral proceeding, however erroneous it may be."). Here, the Delaware Chancery Court had jurisdiction both of the subject matter and necessary parties in the underlying proceeding in which it ordered the appointment of a receiver. If King & Wood wishes to challenge the Receiver Order, it should do so in Delaware, not here.

## VI.   Incorporation of Duane Morris's Non-Meritorious Arguments

The King & Wood motion to dismiss concludes by incorporating the arguments made by Duane Morris in its Motion to dismiss. See Docket No. 13-CV-4571, Doc. Nos. 14, 19. Rather than repeat the Petitioner's arguments set forth in their Opposition to Duane Morris's Motion to Dismiss, those are similarly incorporated herein. See Docket No. 13-CV-4571.

18

## CONCLUSION

For the reasons set forth above, it is respectfully submitted that Garnishee's Motion to Dismiss should be denied in all respects and all fees in its possession received from ZSTN and/or its officers be turned over to Petitioners immediately.

DATED this 26 day of August, 2013.

/s/ David Graff
DAVID GRAFF

ANDERSON KILL & OLICK P.C.
1251 Avenue of the Americas
New York, NY 10020
Ph: (212) 278-1000
Fax:(212) 278-1733
*Attorneys for Petitioners*

19