UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
PETER E. DEUTSCH,                                  :

                Plaintiff/Petitioner, and      :   Case No. 13 CV 5460 (RPP)

RECEIVER ROBERT SEIDEN,                            :

                Plaintiff/Petitioner,          :

  -against-                                       :

ZST DIGITAL NETWORKS, INC.,                        :

                Defendant/Respondent,          :

  -and-                                           :

KING & WOOD MALLESONS,                             :

                Garnishee.                     :
------------------------------------------------------------------x

REPLY MEMORANDUM OF LAW IN SUPPORT OF
KING & WOOD MALLESONS' MOTION TO DISMISS

DUANE MORRIS LLP
1540 Broadway
New York, NY 10036
(212) 692-1000
Attorneys for Garnishee King & Wood Mallesons

TABLE OF CONTENTS

|    |    | | Page |
|---|---|---|---|
| TABLE OF AUTHORITIES | | | ii |
| Preliminary Statement | | | 1 |
| PETITIONERS' OPPOSITION IS UNSUPPORTED BY ANY FACTS | | | 2 |
| I. | PETITIONERS HAVE NOT ESTABLISHED A PRIMA FACIE BASIS FOR EXERCISING PERSONAL JURISDICTION OVER KWM | | 2 |
| | A. | Petitioners Have Not Sustained Their Burden of Establishing a Prima Facie Basis for Exercising Personal Jurisdiction | 2 |
| | B. | Petitioners Cannot Rely on Cromer or Parmalat | 5 |
| | C. | The Exercise of Personal Jurisdiction Over KWM Would Not Comport With Due Process | 7 |
| | D. | No Jurisdictional Discovery Should Be Permitted | 8 |
| II. | PETITIONERS HAVE NOT SHOWN THAT THE PETITION STATES A PLAUSIBLE CLAIM OR PLEADS FRAUD WITH PARTICULARITY | | 9 |
| CONCLUSION | | | 10 |

TABLE OF AUTHORITIES

Cases                                                                                                          Page(s)

In re Asia Pulp & Paper Secs. Litig.,
    293 F. Supp. 2d 391 (S.D.N.Y. 2003)......................................................................6

Burger King Corp. v. Rudzewicz,
    471 U.S. 462, 105 S. Ct. 2174 (1985).................................................................. 7-8

Cromer Fin., Ltd. v. Berger,
    2002 U.S. Dist. LEXIS 7782 (S.D.N.Y. May 2, 2002)...................................... 5-6

Del Monte Fresh Produce, N.A., Inc. v. M/V Africa Reefer,
    2013 U.S. Dist. LEXIS 37991 (S.D.N.Y. Mar. 19, 2013) ......................................4

Doe v. Del. State Police,
    2013 U.S. Dist. LEXIS 51639 (S.D.N.Y. Apr. 4, 2013)........................................3

Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH,
    2002 U.S. Dist. LEXIS 17490 (N.D.N.Y. Sept. 16, 2002) ....................................4

Jazini by Jazini v. Nissan Motor Co.,
    148 F.3d 181 (2d Cir. 1998).........................................................................3, 4, 8

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs.,
    2013 U.S. Dist. LEXIS 49665 (S.D.N.Y. Mar. 28, 2013) .....................................3

Maldonado v. Rogers,
    99 F. Supp. 2d 235 (N.D.N.Y. 2000).....................................................................4

Musso v. Ostashko,
    468 F.3d 99 (2d Cir. 2006).....................................................................................9

Nationwide Mut. Ins. Co. v. Morning Sun Bus. Co.,
    2011 U.S. Dist. LEXIS 10131 (E.D.N.Y. Feb. 2, 2011)........................................3

Nuevo Mundo Holdings v. PwC LLP,
    2004 U.S. Dist. LEXIS 780 (S.D.N.Y. Jan. 22, 2004)...........................................6

In re Parmalat Secs. Litig.,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005)................................................................5, 6

Skidmore Energy, Inc. v. KPMG,
    2004 U.S. Dist. LEXIS 28396 (N.D. Tex. Dec. 28, 2004) ................................ 6-7

Sodepac, S.A. v. Park,
    2002 U.S. Dist. LEXIS 19360 (S.D.N.Y. Oct. 9, 2002) ........................................8

Star Energy Corp. v. RSM Top-Audit,
   2008 U.S. Dist. LEXIS 99825 (S.D.N.Y. Nov. 26, 2008) ...................................................... 5-6

Stutts v. De Dietrich Grp.,
   465 F. Supp. 2d 156 (E.D.N.Y. 2006) ......................................................................................... 8

Watson v. Riptide Worldwide, Inc.,
   2012 U.S. Dist. LEXIS 15125 (S.D.N.Y. Feb. 7, 2012) .............................................................. 10

Wiwa v. Royal Dutch Petroleum Co.,
   226 F.3d 88 (2d Cir. 2000) ........................................................................................................... 5

**Statutes**

N.Y. Debtor & Creditor Law § 276 .................................................................................................. 9-10

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................................. 10

Fed. R. Civ. P. 58 .................................................................................................................................. 9

From The Big Four to Big Law: The Swiss Verein and the Global Law Firm,
   22 Geo. J. Legal Ethics 1177 (2009) ........................................................................................... 7

Preliminary Statement

If Petitioners had a legitimate reason for commencing this turnover proceeding against a law firm they believed was representing ZST,[1] it did not emerge from their opposition papers. The proceeding appears to have been designed to keep ZST from taking any steps to cure its default in Delaware by preventing it from retaining and paying counsel. But, at a hearing in Delaware Chancery Court on August 23, 2013, Petitioners' counsel represented that they brought the turnover proceeding against Duane Morris – the firm whose payment KWM has now been sued for facilitating – in order to spur Duane Morris into acting on behalf of ZST. In Petitioners' counsel's words, "frankly, we only filed the turnover proceeding against Duane Morris to get them going. We have been begging them for months."[2] (Ex. A to Jacobs Reply Decl., p. 33.)

Given the rationale Petitioners offered on August 23 for filing their turnover proceeding against Duane Morris, it is difficult to understand why, three days later, they opposed the dismissal of the turnover proceeding they filed against KWM. If, as Petitioners claim, they are anxious for ZST to appear in Delaware Chancery Court, the last thing they should have wanted to do was impede ZST's ability to retain counsel. But, even if Petitioner's decision to pursue this proceeding could somehow be reconciled with their avowed objective, they have shown no reason why the Petition should not be dismissed.

As a procedural matter, Petitioners have not sustained their burden of making a prima facie showing that this Court can exercise personal jurisdiction over KWM. Instead of presenting facts that, if credited, would establish jurisdiction over KWM or KWM HK, Petitioners simply pronounce the legal notice on KWM's website "bogus," and then point to other parts of the website which refer to KWM as a "global law firm" and "fully integrated

---

[1]   Defined terms have the same meaning in this reply as in KWM's original memorandum.

[2]   Despite this statement, Petitioners have done their best to keep ZST from being represented by counsel of its choosing. On July 31, 2013, the Receiver implemented a resolution directing one of ZST's subsidiaries to "cease and desist all legal work with the law firms Duane Morris, King & Wood Mallesons and Harneys Westwood & Riegels. . . ." (Jacobs Reply Decl. Ex. B ¶ 7.)

partnership." Without more, similar references have uniformly been held insufficient to treat the New York office of a Swiss Verein as the Verein's agent. Because Petitioners failed to make a threshold showing of jurisdiction, their request for jurisdictional discovery should be denied.

The Petition is also substantively deficient. Petitioners have not shown any basis for alleging that KWM made fraudulent transfers to Duane Morris. Indeed, they concede that, when KWM wired funds to Duane Morris, no order had been issued prohibiting ZST from making any payments once the Receiver was appointed, nor had an order approving payment to the Receiver been entered. Thus, even if KWM's wire transfer had been made with ZST funds – an allegation for which Petitioners offer not a shred of factual support – it would not have violated an order prioritizing payments to the Receiver. The Petition should therefore be dismissed.

## PETITIONERS' OPPOSITION IS UNSUPPORTED BY ANY FACTS

In opposition to KWM's motion to dismiss, Petitioners submitted only the declaration of an attorney with no first-hand knowledge of the relevant facts. Since Petitioners were unable to refute the facts KWM presented, they have tried to compensate for this shortcoming by characterizing KWM's evidence as "bogus," "outrageous," and "preposterous." Suffice it to say that inflammatory adjectives and innuendo are not a substitute for legally sufficient facts, and Petitioners have come forward with none.

I. PETITIONERS HAVE NOT ESTABLISHED A PRIMA FACIE BASIS FOR EXERCISING PERSONAL JURISDICTION OVER KWM

Petitioners suggest in their opposition papers that KWM has the burden of establishing the absence of jurisdiction and that jurisdiction can properly be exercised here because KWM is described as a "global law firm" on its website. They are wrong in both respects.

A. Petitioners Have Not Sustained Their Burden of Establishing a Prima Facie Basis for Exercising Personal Jurisdiction

Petitioners disparage the evidence KWM submitted in support of its motion, saying that "[t]he only evidence King & Wood submits to support its contention that it is a 'Swiss verein' is

a declaration from a partner at King & Wood Hong Kong, a declaration from a partner at King & Wood, LLC and a bogus legal notice from its website." (Memorandum of Law in Support of Opposition to King & Wood Mallesons' Motion to Dismiss, "Opp. Mem.," p. 6.) While it is hard to see how Petitioners can denigrate the first-hand testimonial evidence KWM presented,[3] they have the burden of proof backwards. The party asserting jurisdiction has the burden of establishing jurisdiction. The other side does not have to present evidence establishing the absence of jurisdiction. As the court explained in Nationwide Mut. Ins. Co. v. Morning Sun Bus. Co., 2011 U.S. Dist. LEXIS 10131, *9 (E.D.N.Y. Feb. 2, 2011), "Nationwide contends the Court should deny the motion to dismiss because Morning Sun has not provided affirmative evidence that the Court lacks personal jurisdiction. However, it is well-settled that the 'plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.' . . . [T]he burden was not on Morning Sun to show that it was not subject to personal jurisdiction, but rather the burden was on Nationwide to plead facts that, if true, would provide the Court with personal jurisdiction." (Citation omitted.)

To sustain its burden of making a prima facie showing of jurisdiction, the plaintiff/petitioner cannot rely on "'conclusory non-fact specific jurisdictional allegations.'" Doe v. Del. State Police, 2013 U.S. Dist. LEXIS 51639, *36 (S.D.N.Y. Apr. 4, 2013), citing Jazini by Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998). A prima facie showing "entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., 2013 U.S. Dist. LEXIS 49665, *15 (S.D.N.Y. Mar. 28, 2013).

In determining whether plaintiffs have met their burden of establishing that the court can

---

[3] KWM also produced a copy of KWM NY's filing with the New York Secretary of State showing that KWM NY is a "domestic limited liability company." (Ex. B to Jiang Decl.) By contrast, the filing for the New York office of Duane Morris LLP shows that it is a foreign registered limited liability partnership organized under Delaware law. (Jacobs Reply Decl. Ex. C.)

exercise personal jurisdiction over a defendant, "only the factual allegations contained in the pleadings and affidavits are deemed true – not assertions of legal conclusions, unsupported by competent facts." Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH, 2002 U.S. Dist. LEXIS 17490, *4 (N.D.N.Y. Sept. 16, 2002). Accord Jazini, supra, 148 F.3d at 184 ("'we are not bound to accept as true a legal conclusion couched as a factual allegation'"); Maldonado v. Rogers, 99 F. Supp. 2d 235, 239 (N.D.N.Y. 2000) ("Even under the more lenient standard where Plaintiffs must present prima facie evidence of personal jurisdiction prior to an evidentiary hearing being held, Plaintiffs must, at the very least, assert factual allegations to support personal jurisdiction through the pleadings and affidavits submitted by the parties"). And, while a court should review a pleading in the light most favorable to the plaintiff, "it does not accept conclusory allegations or draw argumentative inferences." Del Monte Fresh Produce, N.A., Inc. v. M/V Africa Reefer, 2013 U.S. Dist. LEXIS 37991, *3 (S.D.N.Y. Mar. 19, 2013).

In Jazini, supra, 148 F.3d at 185, the complaint alleged that Nissan Japan maintained a presence in New York through its U.S. subsidiary which it controlled. In opposition to defendants' motion to dismiss, plaintiffs submitted documents showing that Nissan Japan referred to plans for its "global operations." The Second Circuit affirmed the dismissal of the complaint, finding that these allegations "lack the factual specificity necessary to confer jurisdiction" and were "conclusory statements – without any supporting facts. . . ." Ibid.

The same reasoning applies here. The Petition contains a single conclusory allegation that the Court can exercise personal jurisdiction over KWM "as it is a multinational law firm conducting business in New York with an office located on the 42nd Floor of 444 Madison Avenue, New York, NY 10022." (Petition ¶ 3.) In opposition to KWM's motion to dismiss, Petitioners have come forward with no facts which support the Petition's conclusory allegations. They merely make some other conclusory allegations and engage in name-calling, referring to the legal notice on KWM's website as "bogus" and "nothing more than a smokescreen." (Opp.

-4-

Mem. p. 6.) The Court is not required to accept empty rhetoric of this sort as true. Petitioners have thus failed to satisfy their burden of making a prima facie showing, based on legally sufficient averments of fact, that the Court can exercise personal jurisdiction over KWM.

B.  Petitioners Cannot Rely on Cromer or Parmalat

Citing two cases – Cromer Fin., Ltd. v. Berger, 2002 U.S. Dist. LEXIS 7782 (S.D.N.Y. May 2, 2002), and In re Parmalat Secs. Litig., 375 F. Supp. 2d 278 (S.D.N.Y. 2005) – Petitioners contend that a New York court can exercise personal jurisdiction over a foreign member of a Swiss Verein where there is evidence of an agency relationship with the New York member. (Opp. Mem. pp. 6-7.) The problem with their argument is that no agency relationship has been – or can be – alleged here. The Petition nowhere alleges that KWM NY acted as KWM's agent; the papers submitted in opposition to KWM's motion to dismiss do not establish that KWM NY was KWM's agent; and Petitioners have not shown that they could amend the Petition to assert an agency relationship. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 96 (2d Cir. 2000) (agency shown where in-state entity's "sole business function was to perform investor relations services on the defendants' behalf").

In any event, Cromer and Parmalat do not help Petitioners. Far from establishing a general rule that, where a Swiss Verein is described in marketing materials as a global organization or integrated partnership, it is subject to jurisdiction wherever a member has offices, the two cases actually fall within a very narrow exception to the usual rule. In Star Energy Corp. v. RSM Top-Audit, 2008 U.S. Dist. LEXIS 99825, *11-13 (S.D.N.Y. Nov. 26, 2008), plaintiff based an agency claim on defendant's use of the RSM brand name, and then-District Judge and now-Circuit Judge Chin rejected basically the same argument Petitioners make, explaining that Cromer and Parmalat were distinguishable for the following reasons:

> In Cromer, the agency relationship was not that between the headquarters organization, Deloitte, and its affiliate, Deloitte Touche, Bermuda. Rather, an agency relationship was alleged between Deloitte and an individual partner

-5-

located in the Bermuda company. The facts of Cromer do not line up with the facts presented in this case. In Cromer, the partner was identified by Deloitte as a "global practice leader," member of Deloitte's Global Financial Services Industries team, and part of Deloitte's global investment management and hedge fund practice. In other words, a Deloitte partner was involved with the Bermuda affiliate in performing work for the plaintiff. On those facts, the Court in Cromer correctly found that a principal-agent relationship existed. In this case, there are no such allegations. No individual partner or employee of RSM International is alleged to have worked with RSM Top-Audit in preparing the Volga-Neft business plans or audits. Rather, Star Energy merely claims that RSM International "advertises itself as one combined organization" and has "member firms in over 64 countries and is represented in each of the top 40 major business centres throughout the world." A principal-agent relationship cannot be found on such general assertions. Accordingly, Cromer does not support Star Energy's position.

Similarly, Star Energy's reliance on In re Parmalat is misplaced. In that case, the Court found that plaintiffs stated a plausible claim for an agency relationship because the alleged member firm "sought direction and help" on the specific audit and the umbrella organization "took [actions] in directing – or directing the removal of – auditors on the Parmalat audit." Here, there is no allegation that RSM Top-Audit sought help from RSM International or that RSM International exercised any authority over the audit of Star Energy.

For many of the same reasons that Cromer and Parmalat were inapposite in Star Energy, they are inapposite here: New York is not the worldwide headquarters of KWM; no one from KWM Hong Kong is alleged to have had global responsibilities; and the KWM umbrella organization is not alleged to have directed that KWM NY do anything relating to ZST.

While limiting Cromer and Parmalat to their facts, Judge Chin followed Nuevo Mundo Holdings v. PwC LLP, 2004 U.S. Dist. LEXIS 780, *8 (S.D.N.Y. Jan. 22, 2004) – a case KWM cited in its moving papers – which holds that "[m]ember firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name"). Other courts addressing the same issue have consistently reached the same conclusion. In re Asia Pulp & Paper Secs. Litig., 293 F. Supp. 2d 391, 395 (S.D.N.Y. 2003) (no agency where "[p]laintiffs rely solely on the 'one firm' unified-company-theory" and failed to allege control); Skidmore Energy, Inc. v. KPMG, 2004 U.S. Dist. LEXIS 28396, *10 (N.D. Tex. Dec. 28, 2004) ("KPMG contends that the Plaintiffs' allegations

that KPMG was acting as a 'worldwide organization' are 'insufficient as a matter of law to state a claim against KPMG LLP for the acts of the KPMG member firm in Morocco' – and points out that numerous courts addressing similar allegations 'have required plaintiffs to plead substantially more than a bare bones 'unified company theory.' The Court agrees") (collecting cases); see From The Big Four to Big Law: The Swiss Verein and the Global Law Firm, 22 Geo. J. Legal Ethics 1177, 1187 (2009) ("The courts have not appeared eager to expand Cromer as a basis for vicarious liability of accounting firms' umbrella organizations, however, at least where the claims are based mainly upon the firms' corporate structure and do not allege affirmative conduct showing that the Swiss verein actually controlled its member firms").

As for Petitioners' one-sentence argument that cases involving accounting firms are inapplicable because KWM is a law firm, it is truly a distinction without a difference. See From The Big Four to Big Law, supra, at 1186 ("Litigation involving large accounting firms structured as Swiss vereins informs that analysis of whether law firm members of a Swiss verein will be considered separate and independent of the umbrella organization and of the other member firms . . . ."). There is no reason why law firms and accounting firms organized as Swiss Vereins should be treated differently for jurisdictional purposes.

C.   The Exercise of Personal Jurisdiction Over KWM Would Not Comport With Due Process

Neither of the reasons Petitioners give why the exercise of personal jurisdiction would not offend due process holds up to scrutiny. First, Petitioners contend that KWM engaged in conduct directed to New York by wiring funds to Duane Morris. (Opp. Mem. p. 10.) In actuality, KWM wired funds from Hong Kong to Philadelphia. (See Graff Decl. Ex. 5, p. 37.) KWM thus did not purposefully avail itself of the privilege of doing business in New York and had no reason to anticipate being haled into court here. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985) (due process requires "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State,

-7-

thus invoking the benefits and protections of its laws") (emphasis added).

The only other due process argument Petitioners make is that the Receiver is a New York resident for whom this is a convenient forum. Each of the other four factors weighs heavily against the exercise of jurisdiction: the burden on KWM of defending itself here would be substantial; New York has no interest in this dispute, which arises out of litigation that is still pending in Delaware; this Court is not the most efficient forum for resolving a dispute concerning a Delaware Chancery Court order; and entertaining this suit would further no important social policies of New York.

D.   No Jurisdictional Discovery Should Be Permitted

In a footnote, Petitioners suggest that, if the Court is in doubt about whether it can exercise personal jurisdiction over KWM, it should permit limited jurisdictional discovery. (Opp. Mem. p. 8 n.4.) Petitioners have not made a sufficient showing to justify subjecting KWM to jurisdictional discovery. Jazini, supra, 148 F.3d at 184 (request to conduct jurisdictional discovery denied "[s]ince the Jazinis did not make a prima facie case that the district court had jurisdiction over Nissan Japan"; "We recognize that without discovery it may be extremely difficult for plaintiffs in the Jazinis' situation to make a prima facie showing of jurisdiction over a foreign corporation. . . . That, however, is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States – as it properly may do"); Stutts v. De Dietrich Grp., 465 F. Supp. 2d 156, 169 (E.D.N.Y. 2006) ("District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction"); Sodepac, S.A. v. Park, 2002 U.S. Dist. LEXIS 19360, *16 (S.D.N.Y. Oct. 9, 2002) (discovery to determine relationship between defendant and purported agent denied because plaintiffs' jurisdictional allegations were "[v]ague and generalized"). Jurisdictional discovery should also be denied here.

-8-

## II. PETITIONERS HAVE NOT SHOWN THAT THE PETITION STATES A PLAUSIBLE CLAIM OR PLEADS FRAUD WITH PARTICULARITY

To maintain a turnover proceeding and a fraudulent conveyance claim, Petitioners would need to show that a judgment was entered against ZST and that KWM made a transfer with fraudulent intent. They have shown neither.

No judgment has been entered against ZST in New York to date. Since turnover proceedings cannot be brought before judgment is entered, and no judgment has been entered here against ZST, this proceeding should be dismissed as premature. Musso v. Ostashko, 468 F.3d 99, 106 (2d Cir. 2006) ("in New York, a judgment cannot be enforced prior to entry"). Petitioners cannot make this problem go away by having the Court issue an order saying that judgment was entered on a day when it is clear from the docket sheet that judgment was not entered. See Fed. R. Civ. P. 58 (time of entry of judgment is "when the judgment is entered in the civil docket"). Absent a docketed judgment, enforcement proceedings are premature.

While Petitioners at least asked this Court to domesticate a money judgment – albeit in the wrong amount – they never asked the Court to domesticate the order that "prioritizes" payments to the Receiver. They dispute this in a footnote and, as proof, refer to the introduction to the memorandum of law they submitted in support of their motion for summary judgment in lieu of complaint, which actually states that Petitioners are seeking to domesticate "two Orders," and not three, as they now claim. (Opp. Mem. p. 17 n.7.) The Receiver Order – the one Petitioners now contend KWM violated – was never presented to the Court in connection with the motion for summary judgment in lieu of complaint. (See Docket No. 13 CV 2533.) Since a federal court only has ancillary jurisdiction to enforce its own orders, and this Court was never asked to domesticate the Receiver Order, the Court would lack jurisdiction to enforce that order even if Petitioners had properly pled a fraudulent conveyance claim. They have not done so.

As Petitioners concede, a claim under Debtor & Creditor Law § 276 must be pled with

the particularity required by Fed. R. Civ. P. 9(b). This requires that they allege both "intent to defraud" and "facts that give rise to a 'strong inference of fraudulent intent.'" Watson v. Riptide Worldwide, Inc., 2012 U.S. Dist. LEXIS 15125, *25-26 (S.D.N.Y. Feb. 7, 2012). The only "fact" Petitioners offer of fraudulent intent is KWM's supposed knowledge of the Receiver Order. Even if KWM had knowledge of that order on May 13, 2013 when it made the wire transfer to Duane Morris, that would not give rise to an inference of fraudulent intent. The Receiver Order did not prohibit ZST – much less ZST's officers and shareholders – from making any payments while the Receiver Order was in place. (Graff Ex. 13.) On the contrary, it provided: "All fees and expenses approved by the Court shall be paid promptly by the Company. Payment of the fees and expenses of the Receiver . . . shall have priority over other obligations, payments or distributions of the Company." (Id., p. 4.) Petitioners concede that, as of May 13, 2013, the Delaware Chancery Court had not yet approved payment of any of Receiver fees and expenses. Since the Receiver was not entitled to payment at the time of the wire transfer, KWM would have had no reason to believe the transfer was improper – had the the funds it transferred come from ZST, as assertion itself based on wrongly assuming that ZST "insiders" are the same as ZST. Petitioners have thus pled no facts giving rise to an inference of fraudulent intent.

To the extent that the Petition alleges that "it is believed that [KWM] has disbursed additional ZSTN funds to DM to finance ZSTN's legal expenses and that [KWM] will continue to do so," it does not satisfy Rule 9(b). Watson, supra, 2012 U.S. Dist. LEXIS 15125, *30 (fraudulent conveyance claim dismissed for lack of particularity because "Plaintiffs do not specify when the defendants executed the Transfers, the amounts of the Transfers, by what mechanism funds were transferred, or the source of the funds").

## CONCLUSION

It is respectfully submitted that the Petition should be dismissed.

Dated: New York, New York
      September 5, 2013

                              DUANE MORRIS LLP

                              By: *Fran M. Jacobs*
                                    Fran M. Jacobs
                                    Kevin Potere
                              1540 Broadway
                              New York, NY  10036
                              (212) 692-1000
                              Attorneys for Garnishee King & Wood Mallesons